**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cathy Mollinea, et al., | No. CV-24-01080-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Highmark Incorporated, et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion to Dismiss (Doc. 15) and Plaintiff Cathy Mollinea's Motion to Transfer Venue to the Western District of Pennsylvania (Doc. 16). The briefing is complete, and upon review, the Court will deny Defendants' Motion and grant Plaintiff's Motion.

**I.   BACKGROUND**

Plaintiff is a licensed insurance agent who sells insurance policies issued by Defendants. (Doc. 1 at 4 ¶¶ 17–18.) Defendant Highmark Inc. is in the business of issuing health insurance policies pursuant to the Affordable Care Act in Pennsylvania, West Virginia, Delaware, and New York ("Highmark's Territory").[1]  (*Id.*; Doc. 15-1 at 3 ¶ 7.) Defendants advertised to insurance agents that they would pay a flat fee commission per household member for each insurance policy sold. (Doc. 1 at 4 ¶ 21.) Defendants required insurance agents to contract with Field Marketing Organizations ("FMOs") or general agents (collectively, "Brokers") to receive the advertised commission payments. (*Id.* ¶ 20.)

---

[1] Defendant Highmark Health is the parent company of Highmark Inc. and does not directly sell insurance policies. (Doc. 15-1 at 3 ¶ 7.)

1 Brokers would allegedly receive an administrative fee for collecting the commission
2 payment from Defendants before disbursing those commissions to the insurance agent that
3 sold the policy. (*Id.* at 4–5 ¶ 22.)

4 From 2016 through 2021, Plaintiff contracted with HealthMarkets Insurance
5 Agency ("HealthMarkets"), a licensed health insurance brokerage that also contracted with
6 an Emerson Rogers, an FMO. (*Id.* at 5 ¶ 23.) Under the contracts, Plaintiff would sell a
7 policy entitling them to a commission from Defendants. (*Id.* ¶ 24.) Defendants would
8 issue the payment to Emerson Rogers, who would then issue the commission payment to
9 HealthMarkets. (*Id.*) Finally, HealthMarkets would pay the commission to Plaintiff per
10 the terms of the contract between HealthMarkets and Plaintiff. (*Id.*) From 2021 through
11 March 2024, Plaintiff contracted with Kistler Tiffany Benefits, an FMO that also
12 contracted with Defendants. (*Id.* ¶ 25.) This contract also used a downstream commission
13 payment system whereby Defendants would pay the Brokers, and the Brokers would pay
14 the Plaintiff. (*Id.* ¶¶ 25–27.)

15 Plaintiff alleges that from 2016 through the present, she has earned commissions
16 after selling thousands of Defendants' policies. (*Id.* at 6 ¶ 29.) Plaintiff contends that
17 Defendants did not issue all of her commission payments to the Brokers, resulting in
18 Plaintiff not being paid for the commissions she earned. (*Id.* at 5–6 ¶¶ 28, 30.)
19 Alternatively, Plaintiff alleges that Defendants failed to issue all commission payments
20 owed to Plaintiff to the Brokers, preventing the Brokers from properly identifying and
21 disbursing commission payments to Plaintiff and other agents. (*Id.* at 6 ¶ 31.)

22 As a result of Defendants' alleged acts, Plaintiff sued on behalf of herself, and others
23 similarly situated, claiming (1) breach of contract; (2) breach of third-party beneficiary
24 contract; (3) breach of duty of good faith and fair dealing; (4) unjust enrichment; and (5)
25 negligence. (Doc. 1 at 8–14 ¶¶ 44–76.) Defendants filed a Motion to Dismiss for lack of
26 personal jurisdiction and failure to state a claim. (Doc. 15.) Plaintiff filed a competing
27 Motion to Transfer Venue to the Western District of Pennsylvania. (Doc. 16.)
28 **II.    LEGAL STANDARDS**

**A. Rule 12(b)(2)**

Rule 12(b)(2) allows a party to move to dismiss based on lack of personal jurisdiction. Personal jurisdiction refers to the power that a court has over the parties. This jurisdiction is proper when it is provided for by law and the exercise of jurisdiction comports with due process. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona has authorized its courts to exercise jurisdiction over persons "to the maximum extent permitted by . . . the United States Constitution." Ariz. R. Civ. P. 4.2(a).

Due process requires the defendant have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). When analyzing sufficient minimum contacts, courts distinguish between general and specific jurisdiction. General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, whereas specific jurisdiction exists when the controversy arises from or is related to the defendant's contact with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). The Court "employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state" to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### B. 28 U.S.C. § 1631

Under § 1631, a case is transferable when three conditions are met: "(1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Puri v. Gonzalez*, 464 F.3d 1038, 1043 (9th Cir. 2006).

## III. DISCUSSION

### A. Personal Jurisdiction

Defendants argue that this Court lacks personal jurisdiction over them, and thus this case must be dismissed. (Doc. 15 at 5–10.) Plaintiff seemingly does not challenge the argued lack of personal jurisdiction, and instead petitions the Court to transfer this case to the Western District of Pennsylvania both in her Response (Doc. 18) and separate Motion to Transfer (Doc. 16). Nevertheless, the Court endeavors to show why it lacks personal jurisdiction over Defendants.

"Under the first of the three prongs of [the] specific personal jurisdiction analysis, the Ninth Circuit typically uses a purposeful direction test for cases sounding in tort and a purposeful availment test for cases sounding in contract." *LifeSuccess Prods. LLC v. Martinelli*, No. CV–13–01272–PHX–GMS, 2013 WL 6499298, at *3 (D. Ariz. Dec. 11, 2013). "[W]here there are both contract and tort claims, either test can apply." *Id.* at *4. Here, Plaintiffs do not satisfy the first prong under either inquiry. The purposeful direction test typically inquires "whether a defendant 'purposefully direct[s] his activities' at the

forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (alteration in original) (citation omitted). The "effects" test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citation omitted).

Plaintiff alleges in the Complaint that the Court possesses personal jurisdiction over Defendants because "the acts alleged involved insurance agents, including Plaintiff Cathy Mollinea, who were located in [Arizona]." (Doc. 1 at 4 ¶ 15.) Plaintiff also alleges, that the "actions giving rise to Plaintiffs [sic] claims were committed within the State of Arizona as well as several other states including Pennsylvania." (Doc. 1 at 3 ¶ 13.) The first allegation, as Defendants put it, is best understood as an "individualized targeting argument." *See Nexa Mortg. LLC v. Smart Mortg. Ctrs. Inc.*, No. CV-23-00410-PHX-SPL, 2023 WL 7282304, *2 (D. Ariz. Nov. 3, 2023); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) ("A theory of individualized targeting alleges that a defendant 'engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" (citation omitted)). This type of plaintiff-centric jurisdiction argument does not show how a defendant has purposefully directed his or her actions at the forum state. *See Axiom Foods*, 874 F.3d at 1070 ("[W]hile a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction . . . ."). In other words, purposeful direction does not exist simply because an injured Plaintiff resides in a given forum.

The second allegation fares no better. Plaintiff does not expound on Defendants' alleged acts beyond merely pleading they occurred in Arizona. And, in fact, Plaintiff does not contest that she only sold insurance policies to residents in Highmark's Territory, specifically Pennsylvania and West Virginia. (Doc. 15-1 at 3 ¶¶ 6–12.) Thus, without more, Plaintiff has failed to plead that the injury she suffered is "tethered to the forum state

in some meaningful way," and has therefore failed to satisfy the purposeful direction test. *See Gonzalez v. US Human Rights Network*, 512 F. Supp. 3d 944, 959 (D. Ariz. 2021) ("The 'potential foreseeability of some incidental harm' to Plaintiff in Arizona is, on its own, insufficient to establish purposeful direction. Here, there is nothing to suggest a meaningful connection between Arizona and Plaintiff's injuries. Her alleged injury has occurred in Arizona because she happened to live in Arizona, but this injury is 'entirely personal to h[er] and would follow h[er] wherever she might choose to live or travel.'" (cleaned up)).

Plaintiff fails to establish the first prong under the purposeful availment inquiry for largely the same reasons. When applying the purposeful availment test, courts consider whether "the defendant deliberately has engaged in significant activities with the State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76 (1985). Courts will, however, rebuke a crafty plaintiff's attempt to show purposeful availment through reliance on a "unilateral activity of another party or third person," *Hall*, 466 U.S. at 417, or where defendant's contacts are "random, fortuitous, or attenuated." *Rudzewicz*, 471 U.S. at 475 (quotation marks omitted); *see also Smith v. Progressive Produce LLC*, No. CV-21-01597-PHX-SMM, 2022 WL 1210647, *3 (D. Ariz. Mar. 1, 2022) ("[T]he act of contracting itself is not sufficient for purposeful availment."). Defendants do not sell, nor are they licensed to sell, insurance policies in Arizona. (Doc. 15-1 at 3 ¶¶ 6–12.) Indeed, Defendants only connection with Arizona seems to be the fact that Plaintiff resides here. (*See* Doc. 1 at 3–4 ¶¶ 8, 15.) And, though a "corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there," *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014), the record here establishes that neither Plaintiff nor Defendants could act in Arizona.

At bottom, Plaintiff has not offered any argument or evidence showing that Defendants satisfy the first prong of the minimum contacts analysis. Consequently, the Court finds that it does not have personal jurisdiction over Defendants, thereby warranting dismissal. However, for the reasons discussed below, the Court will not dismiss this case

and will instead transfer it to the Western District of Pennsylvania.

**B.  28 U.S.C. § 1631**

Plaintiff motions the Court to transfer this case under 28 U.S.C. § 1404 or § 1631. Because the Court finds that it lacks personal jurisdiction over Defendants, transfer under § 1404 is improper. However, if a court determines that it lacks personal jurisdiction over a defendant, it may transfer the case to any district in which it could have been initially brought if certain requirements are met. *See Harrell v. Kepreos*, 175 F. App'x 793, 794 (9th Cir. 2006).

The three conditions are required to a transfer a case under § 1631: "(1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Puri*, 464 F.3d at 1043. Regarding the first requirement, the Western District of Pennsylvania would ostensibly have personal jurisdiction over Defendants. Defendants' headquarters is in Pittsburg, Pennsylvania, located in the Western District. (*See* Doc. 15-1 at 2.) Moreover, Defendants regularly conduct business in Pennsylvania. (*See id.* at 2–3.) These facts alone would establish that Defendants had substantial contacts with the Western District of Pennsylvania for personal jurisdiction purposes. *See Hall*, 466 U.S. at 414–16. As to the second requirement, this Court has determined it lacks personal jurisdiction over Defendants.

For the third requirement, the Ninth Circuit has adopted a "broad view of when transfer is appropriate, recognizing that normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Amity Rubberized Pen Co. v. Mkt. Quest Grp.*, 793 F.3d 991, 996 (9th Cir. 2015) (quotation marks omitted). Transfer is generally in the interest of justice, "unless it is apparent that the matter . . . is frivolous or was filed in bad faith. This is a low bar and . . . it will usually involve a very limited inquiry by the transferring court." *Id.* at 996–97 ("[T]he interest of justice will rarely be served by one court engaging in a lengthy pre-transfer analysis, only ultimately to send the case to a new court that must start

afresh.").[2]

The Court finds several reasons that the interests of justice militate against dismissal and warrant transfer. First, Plaintiff will voluntarily submit to the jurisdiction of the District Court for the Western District of Pennsylvania, thereby snuffing out further personal jurisdiction issues. Second, transferring the case preserves time and resources. Defendants will have the advantage of litigating in its own neighborhood so to speak, and Plaintiff's will not have to waste time refiling this lawsuit, nor shepherd potential class members that may already be preparing to join this litigation. Third, this lawsuit was not brought in bad faith, as Plaintiff's initial choice of venue was predicated on her belief that it should be brought where she was injured.

Defendants do contend, however, that transfer is not appropriate because Plaintiff has not set forth facts showing a prima facie right to relief. (Doc. 17 at 3–4.) And, as noted by Defendants, this Court has previously recognized that a party's failure to make a prima facie showing of right to relief does not serve the interests of justice and may be a reason to deny transfer. *See Erskine v. Fenn*, No. CV-20-08123-PCT-JJT, 2021 WL 321892, *4 (D. Ariz. Feb. 1, 2021); *Clark v. Busey*, 959 F.2d 808, 812 (9th Cir. 1992). There, the pro se plaintiff's claims were plainly frivolous, the statute of limitations would not bar his claim upon dismissal, and he could freely refile in the District of New Mexico. *Id.* Defendants' argument is not without merit, but neither are Plaintiff's claims. (*See* Doc 1.) In other words, to "peek at the merits" in this case does not get the Court or the parties to the result in *Erskine*. Rather, to peek in this case is, in effect, a headlong journey into the merits of

---

[2] The Ninth Circuit has also entertained an idea from its sister circuits. Those courts posit that a district court should "peek at the merits" to determine whether a case is frivolous. *Id.* at 997. If a pending matter is frivolous, transfer is not in the interest of justice. *See id.* The *Amity* court noted, and this Court echoes, the sentiment that the phrase "peek at the merits" leaves "substantial ambiguity about the scope of a transferor court's duty." *Id.* On one hand, a narrow reading of this phrase supports Ninth Circuit precedent that refuses to transfer frivolous appeals. *See id.* (citing *Britell v. United States*, 318 F.3d 70, 75 (1st Cir. 2003) ("[I]f an action or appeal is fanciful or frivolous, it is in the interest of justice to dismiss it rather than to keep it on life support.")). A broader view of this phrase, however, allows a court to engage in a "substantially wider scope of review." *Id.* That broad scope would inevitably let the transferor court weigh the merits as if it had proper jurisdiction. Ultimately, the Ninth Circuit rejected a broad reading of the phrase "peek at the merits," electing to somewhat constrain the interest of justice analysis to precedent supported, narrow inquiry of fancifulness and frivolousness. *See id.*

Plaintiff's claims as if this Court had the proper jurisdiction to hear the case in the first instance. *See Amity*, F.3d at 996–97. Defendants' concerns are best left to the judgment of the transferee court.

Therefore, the Court will grant Plaintiff's Motion to Transfer this case to the Western District of Pennsylvania (Doc. 16).[3]

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** denying Defendants' Motion to Dismiss (Doc. 15).

**IT IS FURTHER ORDERED** granting Plaintiff's Motion to Transfer this case to the Western District of Pennsylvania (Doc. 16) and transferring this case to the United States District Court for the Western District of Pennsylvania.

Dated this 14th day of November, 2024.

Honorable Susan M. Brnovich
United States District Judge

---

[3] Under Ariz. Rev. Stat. § 12-341.01(A), "[I]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Because neither party here "prevails" in a way that the Court finds § 12-341.01 reasonably contemplates, no fees will be awarded. *See Med. Prot. Co. v. Pang*, 25 F. Supp. 3d 1232, 1238–39 (D. Ariz. 2014).